UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ASHLEY II OF CHARLESTON, L.L.C., | ) Case No. 2:05-2782-CWH |
| Plaintiff, | ) |
| v. | ) |
| PCS NITROGEN, INC., | ) **PCS NITROGEN, INC.'S REQUEST** |
| | ) **FOR CERTIFICATION OF** |
| Defendant/Third-Party Plaintiff, | ) **INTERLOCUTORY APPEAL UNDER** |
| v. | ) **28 U.S.C. 1292(b) AND STAY** |
| ROSS DEVELOPMENT CORPORATION, | ) |
| KONINKLUKE DSM N.V., | ) |
| DSM CHEMICALS OF NORTH AMERICA, | ) |
| INC., JAMES H. HOLCOMBE, | ) |
| J. HOLCOMBE ENTERPRISES, L.P. and | ) |
| J. HENRY FAIR, JR., | ) |
| Third-Party Defendants. | ) |

On September 28, 2007, this Court found New Columbia Nitrogen Corporation ("New CNC") to be a successor to Old Columbia Nitrogen Corporation ("Old CNC"). The parties do not dispute that PCS Nitrogen, Inc. ("PCS") is New CNC's successor. The effect of the Court's September 28, 2007 ruling, therefore, is to impose Old CNC's CERCLA liability on PCS. PCS by and through its undersigned counsel asks this Court to re-issue its September 28, 2007 Order and in that Order certify for interlocutory appeal the following questions:

1. Whether the federal common law theories of successor liability in CERCLA cases set forth in *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992) and applied by the Court in its September 28, 2007 Order were invalidated by the United States Supreme Court's holding in *United States v. Bestfoods*, 524 U.S. 51, 70 (1998) that CERCLA liabilities should not be construed to "displace[] or fundamentally alter[] common-law standards of limited liability";

2. Whether, if federal common law theories of successor liability in CERCLA cases remain valid, the substantial continuity theory of successor liability set forth in *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992) and

CHARLESTON\293457v1

>
> applied by the Court in its September 28, 2007 Order only can be applied when the purpose of an asset transfer is to evade CERCLA liability;

3. Whether in its September 28, 2007 Order the Court improperly disregarded authority holding that when an asset purchase agreement transfers assets associated with a particular business it only transfers to the purchaser liabilities associated with that particular business; and

4. Whether the Court in its September 28, 2007 Order improperly interpreted the merger and consolidation theory of successor liability set forth in *Simmons v. Mark Lift Indus., Inc.*, 622 S.E.2d 213, 215, 366 S.C. 308, 312 (2005) as distinct from the *de facto* merger and consolidation theory of successor liability.

PCS further asks the Court to find that the requirements for immediate interlocutory review are satisfied here: the Court's September 28, 2007 Order raises controlling questions of law, there is substantial ground for difference of opinion on each question certified, and immediate appeal may materially advance the ultimate termination of this litigation. *See* 28 U.S.C. § 1292(b). Further proceedings before this Court should be stayed pending a decision on the appeal.

Certification at this time is proper. Section 1292(b) imposes no limitation on when certification can be sought. This Court has the equitable authority to modify an interlocutory order at any time prior to final judgment. *See, e.g., John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922); *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). What is more, immediate appeal serves the interests of all parties. This was apparent during the November 29, 2007 telephonic status conference when there was no objection to certification expressed by the parties when the issue was raised by the Court. Given that PCS requests a stay pending resolution of the appeal, immediate review relieves all parties of the expense of participating in the second phase of this proceeding. This second phase has just begun and has not yet required significant investment by the parties.

Thus, for the reasons set forth below, PCS asks that the Court re-issue its September 28, 2007 Order and include in the re-issued order certification of the questions set forth above.

2

## I.  WHETHER NEW CNC CAN BE DEEMED OLD CNC'S SUCCESSOR IS A QUESTION THAT WARRANTS CERTIFICATION UNDER 28 U.S.C. § 1292(B)

Certification under section 1292(b) is warranted because the Court's September 28, 2007 Order satisfies the three requirements for immediate interlocutory review: (1) the Order raises a controlling question of law, (2) there is substantial ground for difference of opinion on each question certified, and (3) immediate appeal may materially advance the ultimate termination of this litigation.  *See* 28 U.S.C. § 1292(b).

### A.  Questions Of Corporate Successor Liability Are Controlling Questions Of Law

The question presented by the Court's September 28, 2007 Order—whether New CNC is a corporate successor to Old CNC—is indisputably a controlling question of law. A question that disposes of claims against a party is a controlling question of law appropriate for certification under section 1292(b). *See Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583 at *5 (4th Cir. Apr. 26, 1989). There can be no doubt that standard is satisfied here. A determination of successor liability allows litigation against a party to continue and, therefore, presents a controlling question of law. *See, e.g.*, *Polius v. Clark Equipment Co.*, 802 F.2d 75, 77 (3d Cir. 1986) (exercising section 1292(b) jurisdiction, court reviewed determination that purchaser of corporate assets assumed seller's liability under continuity of enterprise theory of successor liability); *New York v. Westwood-Squibb Pharm. Co.*, 62 F. Supp. 2d 1035, 1042-43 (W.D.N.Y. 1999) (finding defendant to be successor to a site owner under both the *de facto* merger and substantial continuity theories of successor liability and certifying order for interlocutory appeal).[1]

---

[1] *See also Leo v. Kerr-McGee Chemical Corp.*, 37 F.3d 96, 97-98 (3d Cir. 1994) (based on section 1292(b) jurisdiction, court reviewed determination that buyer of business assumed liability of seller under product line theory of corporate successor liability); *Southward v. South Central Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir. 1993) (based on section 1292(b) jurisdiction, court reviewed determination that employer that purchased assets of

The fact that a ruling on corporate successor liability might require review of the terms of an asset transfer agreement or an alleged successor's business operations does not require a different result. In *Clark Equipment*, 802 F.2d at 76, for example, the Third Circuit considered both the terms of an asset transfer agreement—including an indemnification provision—and the nature of both the seller and buyer's business operations in reviewing a successor liability determination under section 1292(b) jurisdiction. The Court's approach in *Clark Equipment* is not unique. *See also Kerr-McGee*, 37 F.3d at 97-98 (in determining question of successor liability court considers nature of assets transferred to buyer and retained by seller). The effect of an asset purchase agreement is among the questions of contract interpretation commonly certified for interlocutory review. The scope and significance of release and damage provisions also are reviewed under section 1292(b) jurisdiction. *See, e.g., Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1298 (5th Cir. 1983) (exercising jurisdiction under section 1292(b) court considers scope of general release provision in asset transfer agreement); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 887 (3d Cir. 1975) (same); *Chan v. Korean Air Lines Ltd.*, 490 U.S. 122, 125 (1989) (question of scope of provision limiting of damages certified for review under section 1292(b)).

---

(continued…)

former employer and substantially continued its business assume predecessor's collective bargaining agreement); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 578 (4th Cir. 1996) (based on section 1292(b) jurisdiction, court reviewed determination that purchasers of debtors' assets were debtors' successors).

4

**B.     There Is Substantial Ground For Difference Of Opinion On The Law Of Successor Liability Applied Here**

Interlocutory review also is appropriate here because there is substantial ground for difference of opinion on the Court's conclusion that New CNC is Old CNC's successor. *See* 28 U.S.C. § 1292(b). A substantial ground for difference of opinion exists when the law presents conflicting and contradictory opinions on an issue. *See e.g.*, *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994); *see also KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 82 (E.D.Va. 2000). That is the case here. The Court found New CNC to be a successor of Old CNC based on three different theories of successor liability: (1) the substantial continuity theory set forth in *Carolina Transformer*, 978 F.2d at 837; (2) the theory of assumption of liabilities by agreement set forth in *Carolina Transformer* and *Mark Lift Industries*, 622 S.E.2d at 215; and (3) the theory of merger or consolidation set forth in *Mark Lift Industries*. The Court's interpretation of each of these theories conflicts with the approach taken by other courts. Indeed, its interpretation of *Carolina Transformer* conflicts with United States Supreme Court precedent. There is, therefore, substantial ground for difference of opinion on the issues presented by the Court's September 28, 2007 Order.

**1.     The Substantial Continuity Theory of Liability Set Forth In *Carolina Transformer* And Applied By The Court Was Invalidated By The United States Supreme Court In Its *Bestfoods* Decision**

There is substantial ground for difference of opinion on whether the substantial continuity theory of successor liability set forth in *Carolina Transformer*, 978 F.2d at 837, remains valid after the United States Supreme Court's decision in *United States v. Bestfoods*, 524 U.S. 51, 70 (1998).

In *Carolina Transformer*, the Fourth Circuit expanded the theories under which a company can be found to bear CERCLA liability as a successor. The Court found that in

5

CERCLA cases federal common law expands available theories of successor liability beyond the four generally accepted state law theories of successor liability. One federal common law theory of liability that the Court articulated was the substantial continuity theory of successor liability applied in this case. The United States Supreme Court has since rejected the approach taken in *Carolina Transformer*.

In *Bestfoods* the Supreme Court found that CERCLA liability should not be construed to "displace[] or fundamentally alter[] common-law standards of limited liability." 524 U.S. at 70. *Bestfoods* came at the end of a long line of cases in which the Supreme Court insisted that courts should not use federal statutes as a basis for developing liability theories that displace state law. *See Atherton v. FDIC*, 519 U.S. 213, 218-19 (1997) (overturning a decision based on federal common law and admonishing that federal courts are courts of limited jurisdiction and do not have license to engage in "the judicial 'creation' of a special federal rule of decision"); *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 85 (1994) (courts should not "adopt a court-made rule to supplement a federal statutory regulation that is comprehensive and detailed"). *Carolina Transformer's* development of federal common law theories of successor liability that displace state law in CERCLA cases conflicts with Supreme Court precedent and is no longer valid.

Indeed, since *Bestfoods* the substantial continuity theory of successor liability set forth in *Carolina Transformer* and applied by the Court in its September 28, 2007 Order has been expressly rejected as a basis for imposing CERCLA liability. Four of the United States Courts of Appeals have found the theory invalidated by *Bestfoods*. *See New York v. National Services Indus., Inc.,* 352 F.3d 682, 683 (2d Cir. 2003) ("[A]fter *Bestfoods*, the substantial continuity test cannot be applied to determine successor liability under CERCLA."); *Mickowski v. Visi-Trak Worldwide, L.L.C.*, 415 F.3d 501, 514-15 (6th Cir. 2005) ("We thus find that the substantial

6

continuity doctrine is not a part of general federal common law and, following *Bestfoods*, should not be used to determine whether a corporation takes on CERCLA liability as the result of an asset purchase."); *United States v. Davis*, 261 F.3d 1, 54 (1st Cir. 2001) (rejecting argument that federal "substantial continuity" test should apply to successor liability determination under CERCLA; rather, state common law applies); *United States v. General Battery Corp., Inc.*, 423 F.3d 294, 309 (3d Cir. 2005) ("*Bestfoods* held that CERCLA does not, *sub silentio*, abrogate fundamental common law principles of indirect corporate liability. Accordingly, 'substantial continuity' is untenable as a basis for successor liability under CERCLA."). The Eighth Circuit has "acknowledged that the continuing viability of the substantial continuity theory of corporate successor liability as a creation of federal common law has been seriously questioned following the Supreme Court's pronouncement in *Bestfoods*." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1022 (8th Cir. 2007). The Ninth Circuit never adopted the theory as a basis for imposing CERCLA liability. *Atchison, Topeka and Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 364 (9th Cir. 1997) ("Thus, there is no 'substantial continuation' exception in this circuit.").

In light of the fact that six United States Courts of Appeals would question the validity of the substantial continuity theory of successor liability, there is substantial ground for difference of opinion on the Court's reliance on this theory of successor liability in its September 28, 2007 Order.

> **2.     The Substantial Continuity Theory Of Liability, If It Remains Valid, Was Mis-Interpreted By The Court**

If it survives *Bestfoods*, the substantial continuity theory of successor liability was misinterpreted by the Court as imposing liability more broadly than *Carolina Transformer* intended.

7

Prior to *Bestfoods*, the substantial continuity theory of successor liability was used to impose liability on an entity that attempted to use an asset transfer to escape CERCLA liability. In applying the theory in *Carolina Transformer*, for example, the Fourth Circuit emphasized that evidence indicated the seller in that case transferred assets in order to avoid environmental liability. 978 F.2d at 841. The Court noted that "the record as a whole leaves the unmistakable impression that the transfer of the [assets] ... was part of an effort to continue the business in all material respects yet avoid the environmental liability arising from the ... contamination at the [site]." *Id.* The Eighth Circuit has taken the same approach, finding that "cases imposing 'substantial continuation' successorship have correctly focused on preventing those responsible for the wastes from evading liability through the structure of subsequent transactions." *United States v. Mexico Feed and Seed Co., Inc.*, 980 F.2d 478, 488 (8th Cir. 1992). *See also Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 387 F. Supp. 2d 439, 447-54 (E.D. Pa. 1995) (collecting and discussing cases).

Here, the substantial continuity theory of successor liability, if valid, has no relevance because there is no basis upon which the Court could find that New CNC purchased Old CNC's assets in order to evade CERCLA liability. Thus, there is substantial ground for a difference of opinion on the Court's reliance on this theory of successor liability.

### 3. The Court Improperly Disregarded Authority That Provides It Must Apply Language Limiting A Release Of Liability

There also is substantial ground for disagreement on the Court's approach to the liability transfer provision in the Acquisition Agreement at issue here.

In its September 28, 2007 Order, the Court effectively disregarded limiting language in the liability transfer provision. The Court found that "[i]n Article III of the Acquisition Agreement new CNC agreed to assume the debts of old CNC." *See Ashley II of Charleston,*

8

*L.L.C. v. PCS Nitrogen, Inc.*, Civil Action No. 2:05-2782, 2007 WL 2893372 at *9 (D.S.C. Sept. 28, 2007) ("*Slip Op.*").  Article III of the Agreement limits New CNC's assumption of liabilities to "any and all liabilities and obligations of Seller relating to the Acquired Business and Purchased Assets." *Id.* at *9 n.14.  The Court agreed that the Acquired Business did not include assets sold to another entity, *id.* at *8, and that the Columbia Nitrogen Site was sold to another entity, Holcombe and Fair.  *Id.* at *1.  Nevertheless, the Court found that the Agreement transferred CERCLA liability for the Site.  The Court reached this conclusion by finding that—in spite of the plain language of the liability transfer provision—transferred liabilities were not limited to those "relating to the Acquired Business and Purchased Assets." According to the Court, transferred liabilities extended to all liabilities not expressly retained. *Id.* at *8.  This conclusion contradicts Fifth Circuit authority that holds limiting language in a liability transfer provision must be given effect.

In *Honeywell Intern., Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 434 (5th Cir. 2005), the Fifth Circuit found that an asset purchase agreement that transferred a natural resource business and assets only transferred liabilities and debts related to that business and those assets.  There, the agreement provided that "as of January 1, 1970 [Buyer] . . . assumed all debts (long and short-term), obligations (contractual and otherwise) and liabilities (known and unknown) related to said natural resources business and assets."  *Id.*  The Court found that liabilities associated with assets not transferred were not assumed by the buyer:  "Crucially, the Master Agreement defines [Buyer's] liabilities in terms of the assets transferred under the agreement.  It does not define [Buyer's] liability in terms of all liabilities relating to assets transferred or previously owned by [Seller]." *Id.* at 435.

9

There is a substantial ground for a difference of opinion as to whether, in light of *Honeywell*, the Court erred by disregarding the limiting language of the Acquisition Agreement's liability transfer provision and finding that New CNC assumed liabilities not associated with the transferred business and assets.

### 4. The Court's Finding Of Merger Or Consolidation Is Unsupported By Any Law

There also is substantial ground for disagreement with the Court's finding that under *Mark Lift Industries*, 622 S.E.2d at 215, a consolidation or merger between Old CNC and New CNC occurred. The Court agrees that there is no evidence here of a *de facto* merger. *Slip Op.* at *8. And there can be no question that an actual merger did not occur. *See* S.C. Code Ann. § 33-11-101 (2007). Indeed, that is why it was necessary to try the issue of successor liability. *Mark Lift Industries* provides no other basis for holding that Old CNC and New CNC merged or consolidated. Neither does the successor liability law in other states. It is widely accepted that a finding of merger or consolidation serves as a basis for imposing successor liability on an asset purchaser when the requirements for a *de facto* merger are satisfied. *See, e.g.*, *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 861 N.E.2d 121 (2006); *Cargill, Inc. v. Beaver Coal & Oil Co., Inc.*, 424 Mass. 356, 359, 676 N.E.2d 815 (1997). That did not happen here.

Given that no case law supports the Court's finding that a merger or consolidation can occur in the absence of an actual or *de facto* merger, there is substantial ground for disagreement with the Court's decision that Old CNC and New CNC merged or consolidated.

### C. Immediate Appeal Of These Issues May Materially Advance The Ultimate Termination Of This Litigation.

Finally, certification of the Court's September 28, 2007 Order is warranted because immediate resolution of the issues presented in that Order may materially advance the ultimate termination of this litigation. *See* 28 U.S.C. § 1292(b). If the Fourth Circuit disagrees with the Court's conclusion that New CNC is a successor to Old CNC, this case will end. PCS will have asserted a defense to Ashley II's section 107(a)(2) claim, and PCS will have no basis for seeking contribution from Ashley II or the third-party defendants under section 113. There will be no need for the second phase of the proceedings. *Westwood-Squibb Pharm.*, 62 F. Supp. 2d at 1043. Thus, all of the requirements for certification are satisfied here.

### CONCLUSION

For the foregoing reasons, PCS asks this Court to re-issue its September 28, 2007 Order, and certify in that Order the following questions for interlocutory review under 28 U.S.C. § 1292(b):

1. Whether the federal common law theories of successor liability in CERCLA cases set forth in *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992) and applied by the Court in its September 28, 2007 Order were invalidated by the United States Supreme Court's holding in *United States v. Bestfoods*, 524 U.S. 51, 70 (1998) that CERCLA liabilities should not be construed to "displace[] or fundamentally alter[] common-law standards of limited liability";

2. Whether, if federal common law theories of successor liability in CERCLA cases remain valid, the substantial continuity theory of successor liability set forth in *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992) and applied by the Court in its September 28, 2007 Order only can be applied when the purpose of an asset transfer is to evade CERCLA liability;

3. Whether in its September 28, 2007 Order the Court improperly disregarded authority holding that when an asset purchase agreement transfers assets associated with a particular business it only transfers to the purchaser liabilities associated with that particular business; and

11

4. Whether the Court in its September 28, 2007 Order improperly interpreted the merger and consolidation theory of successor liability set forth in *Simmons v. Mark Lift Indus., Inc.*, 622 S.E.2d 213, 215, 366 S.C. 308, 312 (2005) as distinct from the *defacto* merger and consolidation theory of successor liability.

These are controlling questions of law about which there is substantial ground for difference of opinion, and immediate review of these questions may materially advance the ultimate termination of this litigation. Further proceedings before this Court should be stayed pending resolution of this appeal.

Respectfully submitted,

s/ Wm. Howell Morrison
Wm. Howell Morrison (No. 3586)
Moore & Van Allen, PLLC
40 Calhoun Street, Suite 300
Charleston, SC  29401
Ph. (843) 579-7000
Fax (843) 579-8718
hmorrison@mvalaw.com

*Pro Hac Vice*:
John B. Williams
Kevin P. Holewinski
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Ph. (202) 879-3939
Fax (202) 626-1700
jbwilliams@jonesday.com

ATTORNEYS FOR DEFENDANT
PCS NITROGEN INC.

CHARLESTON, SC

January 14, 2008