IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| Ashley II of Charleston, LLC., | ) |
|  | ) |
| Plaintiff, | ) Civil Action No.: 2:05-2782-CWH |
|  | ) |
| vs. | ) |
|  | ) |
| PCS Nitrogen, Inc., | ) **ORDER** |
|  | ) |
| Defendant/Third Party Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| Ross Development Corp., Koninklijke DSM N.V., DSM Chemicals of North America, Inc., James H. Holcombe and J. Holcombe Enterprises, L.P. and J. Henry Fair, Jr., | ) |
|  | ) |
| Third Party Defendants. | ) |

This matter is before the court on the following motions: (1) DSM Chemicals of North

America Inc.'s motions to dismiss, (2) Philip Services Corporation's motion to quash, and (3)

PCS's motion for leave to file an amended answer, counterclaims, and third party claims and

motion to stay discovery.

I.  Background and Procedural History

Between 1966 and 1972, Columbia Nitrogen Company ("old CNC") operated a

phosphate fertilizer granulation plant, the Columbia Nitrogen Site ("Site"), on approximately 27

acres of the upper peninsula area of Charleston.  Old CNC was owned by DSM North America,

Inc., which was owned by DSM, N.V., a Dutch corporation. The Site was used to produce phosphate fertilizer. Old CNC ceased production in 1972, and all buildings were demolished in 1980. In order to realize a soon to expire $100 million tax advantage, DSM, N.V. decided to shut down old CNC. On October 31, 1986, old CNC was sold to another entity, CNC Corp. ("new CNC"), who assumed old CNC's title and most of its assets and liabilities. Fertilizer Industries, Inc. ("Fertilizer) is the successor to new CNC by merger in 1986. Fertilizer changed its name to Arcadian Corporation ("Arcadian") in 1989. Arcadian merged with defendant PCS Nitrogen, Inc. ("PCS") in 1997.

Around February of 1985, CNC sold the Site to the third party defendants, James H. Holcombe ("Holcombe") and J. Henry Fair, Jr. ("Fair"), who owned and operated the Site until 2003. Either in February of 2003 or on November 23, 2003, the plaintiff Ashley II of Charleston, L.L.C. ("Ashley II") purchased the Site from Holcombe and Fair.

II.  Procedural History

On September 26, 2005, the plaintiff Ashley II filed a complaint alleging that the defendant is a potentially responsible party for the release of a hazardous substance on approximately 27 acres of the upper peninsula of Charleston ("the Site") now owned by Ashley II. The plaintiff brings this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended 42 U.S.C. §§ 9601, *et. seq.*

On July 25, 2006, this Court bifurcated this action to first determine whether the defendant is the successor to Columbia Nitrogen Corporation ("old CNC"), the owner and operator of the Site at the time of the release. On February 20, 21, and 22, 2007, the issue of successor liability was tried before the Court without the benefit of a jury. The Court held that

new CNC is the successor to old CNC and that PCS is the successor to new CNC.

III.  DSM's Motion to Dismiss PCS's Claims

PCS asserts claims against DSM, N.V. and DCNA, collectively "DSM", for derivative

CERCLA liability pursuant to the alter ego doctrine, trust fund doctrine, and mere continuation

doctrine.  Paragraph 64 of PCS's complaint states that DCNA is liable to PCS for contribution.

PCS claims that DSM is derivatively liable because old CNC shared officers and directors with

DSM Chemicals North America, Inc., and these officers and directors made decisions relating to

old CNC and the Site and exercised dominion over old CNC and the Site.

On January 28, 2008, DSM filed a motion to dismiss claiming that as a matter of law,

PCS cannot recover from DSM because: (1) the Acquisition Agreement bars all claims by new

CNC, and hence PCS, against DSM; (2) PCS has not alleged that DSM is directly liable under

CERCLA; and (3) PCS has failed to make allegations sufficient to pierce DSM's corporate veil.

A.  Standard for Deciding a 12(b)(6) Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which

relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court

must accept all well-pleaded allegations in the complaint as true and view them in the light most

favorable to the plaintiff.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

It is well settled that a pleading is sufficient if it contains a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint is not

required to set forth heightened fact pleading of specifics, "but only enough facts to state a claim

for relief that is plausible on its face. [Where the plaintiff fails to nudge its] claims across the line

from conceivable to plausible, [the] complaint must be dismissed."  Bell Atlantic v. Twombly,

127 S.Ct. 1955, 1974 (2007).

B.  Whether the Acquisition Agreement Bars PCS's Claims against DSM

1.  Indemnification Pursuant to the Acquisition Agreement

DSM argues that PCS agreed to assume DSM's CERCLA liability and to indemnify DSM for that liability.  Article VII of the Acquisition Agreement states that: "In consideration of Seller's entering into this Agreement, Buyer agrees to indemnify and hold Seller harmless from and against any and all claims, causes of action, damages, costs, expenses, and liabilities suffered by Seller or successors of Seller arising out of or with respect to the Assumed Liabilities."  On September 28, 2007, the Court entered its findings of facts and conclusions of law.  The Court found that the agreement between old CNC and new CNC was ambiguous and that the parties intended that old CNC be dead and buried after the transfer of assets and liabilities to new CNC.  After considering extrinsic evidence, the Court held that new CNC agreed to assume old CNC's CERCLA liability.  The Court also held that new CNC is the successor to old CNC and that PCS is the successor to new CNC.  The indemnification clause in the Acquisition Agreement cannot be interpreted as a matter of law at this time and is therefore beyond the scope of DSM's motion to dismiss.

2. Derivative Liability

In its third party complaint against DSM, PCS has alleged only derivative liability and not direct liability.  However, it appears to the court that some of the arguments made by the parties relate to direct rather than derivative liability.  The United States Supreme Court has differentiated between direct and derivative liability in CERCLA actions.  United States v. Bestfoods, 524 U.S. 51, 65 (1998).  Under CERCLA, any person who operates a polluting

facility is directly and strictly liable for the costs of cleaning up the pollution.  United States v.

Bestfoods, 524 U.S. 51, 65 (1998).  In determining whether a parent company is directly liable,

courts must bear in mind that CERCLA has not replaced the entire corpus of state corporation

law.  Id. at 63.  Direct liability stems from the actions of the parent company itself.  The question

is not "whether the parent operates the subsidiary but rather whether it operates the facility, and

that operation is evidenced by participation in the activities of the facility, not the subsidiary."

Id. at 67-68.  Whether a parent company owns the subsidiary, actively participates in board

meetings, and controls the subsidiary's board of directors is not sufficient to impose direct

liability.  Id. at 68.  It is entirely appropriate for the directors of a parent corporation to serve as

directors of the subsidiary, and that fact alone may not serve to expose the parent corporation to

liability for the subsidiary's acts.  Id.  In sum, in determining direct liability, a court should focus

on the parent's direct involvement with the operations of the Site.

Only when the corporate veil may be pierced, may a parent corporation be charged with

derivative CERCLA liability for it subsidiary's actions.  United States v. Bestfoods, 524 U.S. 51,

63-64 (1998).  CERCLA does not purport to reject the principle that a parent corporation is not

liable for the acts of its subsidiaries.  "But there is an equally fundamental principle of corporate

law, applicable to the parent-subsidiary relationship as well as generally that the corporate veil

may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the

corporate form would otherwise be misused to accomplish certain wrongful purposes, most

notably fraud, on the shareholder's behalf."  Id. at 62.

The law of South Carolina employs a two-prong test to determine whether a corporate

veil should be pierced.  The first prong involves an examination of the observance of corporate

formalities by the dominant shareholders.  Mid-South Mgmt. Co. v. Sherwood Dev. Corp., 649

S.E.2d 135, 140-41 (S.C. Ct. App. 2007).  To determine whether a corporation observed

corporate formalities, a court should consider the following eight factors:

> (1) whether the corporation was grossly undercapitalized;
> (2) failure to observe corporate formalities;
> (3) non-payment of dividends;
> (4) insolvency of the debtor corporation at the time;
> (5) siphoning of funds of the corporation by the dominant stockholder;
> (6) non-functioning of other officers or directors;
> (7) absence of corporate records; and
> (8) the fact that the corporation was merely a facade for the operations of the dominant stockholder.

Id.  The second prong requires an element of injustice or fundamental unfairness if the acts of the

corporation are not regarded as the acts of individuals; the party seeking to pierce the corporate

veil bears the burden of proving injustice or fundamental unfairness if the veil is not pierced.  Id.

"The essence of the second prong is that an individual business cannot be allowed to hide from

the normal consequences of carefree entrepreneuring by doing so through a corporate shell."  Id.

DSM argues that PCS has not made any allegations sufficient to sustain its piercing the

corporate veil theory.  The essence of PCS's factual allegations relating to its claim concerning

alter ego and piercing DSM's corporate veil is that old CNC shared officers and directors with

DSM Chemicals North America, Inc. and that these officers and directors made decisions

relating to and exercised dominion over old CNC and the Site.  Although PCS may not

ultimately prevail on its derivative claim against DSM, its claim appears plausible.  DSM's

motion to dismiss PCS's Claims against it are denied.

IV.  DSM's Motion to Dismiss Third Party Complaint by Holcombe and Fair and Ross

On December 17, 2007, Holcombe and Fair filed their answer and third party complaint

against DSM, claiming that DSM is liable to them because under §107(a)(2), DSM owned and operated the Site at the time of the release of the hazardous substances.  Third-Party Defs. James H. Holcombe, J. Henry Fair, Jr. and Holcombe Enterprises, L.P. Answer, Counterclaims, and Cross-Claims, ¶ 58. Holcombe and Fair contend that in the event that they are found liable in any way in this action, DSM is strictly, jointly and severally liable for any response costs incurred and that DSM is liable for contribution to Holcombe and Fair pursuant to §113.

On January 28, 2008, Ross filed its answer, counterclaim and third party complaint against DSM, claiming that DSM is liable pursuant to §107(a)(2) because DSM owned the Site at the time of the release of the hazardous substances.  Ross Dev. Corp.'s Answer to PCS Nitrogen, Inc.'s Am. Third Party Compl.; Counterclaim Against PCS Nitrogen, Inc.; and Cross-Claims Against Koninklijke DSM N.V., DSM Chemicals of North America, Inc.; James H. Holcombe and J. Holcombe Enterprises, L.P. and J. Henry Fair, Jr., ¶ 62.  Ross also alleges that if it is found liable in any way in this action, DSM is jointly and severally liable and Ross is entitled to contribution from DSM pursuant to §113.

On February 14, 2008, DSM filed a motion to dismiss Holcombe and Fair's third party complaint and Ross's third party complaint against it.  DSM claims that: (1) Ross and Holcombe and Fair cannot recover contribution pursuant to §113 because Ross and Holcombe and Fair are not jointly liable and (2) Holcombe and Fair cannot recover from DSM because DSM is not liable to PCS.  On March 3, 2008, Holcombe and Fair responded to DSM's motion to dismiss. On March 4, 2008, Ross responded to DSM's motion to dismiss.

### 1.  Direct Liability

First, DSM claims that no party has alleged that DSM is subject to direct liability under

CERCLA.  DSM's Mot. to Dismiss, 2.  The Court is reluctant to make such a holding at this

stage of the proceedings.  Although parties seek contribution from DSM, it does appear that

parties claim that DSM is directly liable under § 107 of CERCLA.  For example, Holcombe and

Fair allege that DSM "is liable under CERCLA as a person, within the meaning of Section

107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), who owned and operated the Site at the time of

disposal of hazardous substances or as the successor in interest to the prior owner and operator of

the Site who owned and operated the Site at the time of disposal of hazardous substances."

Holcombe and Fair Answer, Counterclaims, and Cross-Claims, ¶ 58.  Ross makes the same

allegation in paragraph 62 of its answer, counterclaim, and third party claim against DSM.

CERCLA imposes strict liability on any person who owns or operates a polluting facility;

an owner or operator is directly liable for the costs of cleaning up the pollution.  United States v.

Bestfoods, 524 U.S. 51, 65 (1998).  The issue in determining direct liability is whether the parent

operates the facility.  At this time, the Court cannot hold as a matter of law that Holcombe and

Ross and Fair have no claim for direct liability against DSM.  Holcombe and Fair and Ross

allege that DSM either owned or operated the Site at the time of the release of the hazardous

substance. Holcombe and Fair and Ross have plausibly alleged that DSM is directly liable as an

owner or operator of the Site at the time of the release of a hazardous substance.

DSM also claims that PCS has not asserted a claim for direct liability against Ross and

Holcombe and Fair.  Based on its third party complaint, it appears that PCS seeks to recover only

contribution.  However, PCS alleges that Holcombe and Fair are directly liable for their acts

during construction which exacerbated the contamination at the Site and caused additional

releases of hazardous substances.  Amended Answer, Counterclaim, and Amended Third-Party

Claims of Def. PCS Nitrogen, Inc., ¶¶ 70-99.  PCS alleges that Ross bought the Site in 1906 and

owned the Site during fertilizer production.  PCS seeks contribution from Ross and alleges that

Ross is directly liable for the release of hazardous substances that occurred in the course of

fertilizer production while Ross owned the Site.  Amended Answer, Counterclaim, and Amended

Third-Party Claims of Def. PCS Nitrogen, Inc., ¶¶ 6-25.  PCS does not allege that Holcombe and

Fair and Ross are derivatively liable or that a corporate veil should be pierced.  Rather, PCS

alleges that Ross and Holcombe and Fair are directly liable for their ownership and operation of

the Site when a release of a hazardous substance occurred.

2.  Contribution from DSM Based on Ross and Holcombe and Fair's Liability

DSM claims that Ross and Holcombe and Fair are not jointly liable for two reasons.

First, PCS seeks contribution from them and has not alleged that Ross and Holcombe and Fair

are directly liable.  As stated above, PCS has alleged that Ross and Holcombe and Fair are

directly liable for the release of a hazardous substance that occurred while Ross and Holcombe

and Fair owned the Site.

Second, according to DSM, liability for contribution under § 113(f) is not joint.  The

Fourth Circuit Court of Appeals has noted in passing that liability under § 113(f) is several only,

as opposed to joint and several under § 107.  Minyard Enterprises v. Southeastern Chemical and

Solvent Co., 184 F.3d 373, 385 (4th Cir. 1999), *citing* Centerior Serv. Co. v. Acme Scrap Iron &

Metal Corp., 153 F.3d 344, 350 (6th Cir. 1998) (holding that potentially responsible parties

could only recover under § 107 and not § 113).[1]  Recovering contribution under § 113 requires

---

[1] In Atlantic Research Corp. v. United States, 459 F.3d 827, 836 (8th Cir. 2006), the
Eighth Circuit Court of Appeals declined to follow Centerior Serv. Co.  In 2007, the Supreme
Court affirmed the Eighth Circuit.   United States v. Atlantic Research Corp., 127 S.Ct. 2331,

common liability between two or more parties.  In Re Reading, 115 F.3d 1111, 1124 (3d Cir. 1997).  Therefore, DSM concludes that Ross and Holcombe and Fair cannot recover contribution because liability under § 113(f) is not joint.

The Supreme Court has recently explained recovery of contribution under § 113.  United States v. Atlantic Research Corp., 127 S.Ct. 2331, 2337-38 (2007).  Section 113(f) explicitly grants potentially responsible parties ("PRPs") a right to contribution.  Contribution is defined as the tortfeasor's right to collect from others responsible after the tortfeasor pays his or proportionate share.  Id. at 2338.  Section 113(f)(1) permits private parties to seek contribution during or following a civil action under § 106 or § 107(a).  Id. at 2334 n.1. "Thus, § 113(f)(1) permits suit before or after the establishment of common liability.  In either case, a PRP's right to contribution under § 113(f)(1) is contingent upon inequitable distribution of common liability among liable parties."  Id. at 2338.  Whether DSM shares common liability with Holcombe and Fair and Ross is an issue that is beyond the scope of DSM's motion to dismiss.  DSM may be liable to Holcombe and Fair and Ross for contribution in the event that they pay more than their proportionate share of costs.  DSM's motion to dismiss Ross and Holcombe and Fair's claims against it is denied.

V.  PCS's Motion to Amend its Answer, Counterclaims, and Third Party Claims

On April 9, 2008, PCS moved to amend its answer, counterclaims, and third-party claims.  On April 28, 2008, Ashley II, Ross, and DSM opposed the motion.  First, PCS wishes to add a theory of cost recovery under § 107.  In addition, PCS wishes to add Allwaste, Robin

---

2337-38 (2007).  Whether liability under § 113 is several only is an issue of law to be addressed later in this action.

Hood, and the City of Charleston as third party defendants because they are adjacent landowners

to Ashley II.  PCS claims that Ashley II or the EPA will bring an action against Allwaste, Robin

Hood, and the City of Charleston in the future, and that it would be most efficient to determine

those parties' liability in this action.  PCS also wishes to add 29 shareholders of Ross as third

party defendants.  Finally, PCS wishes to amend its claim against DSM from derivative liability

only to both derivative and direct liability.

A.  PCS's Cost Recovery Claim Pursuant to § 107

Leave to amend a complaint should be freely given in the absence of any apparent or

declared reasons such as undue delay, bad faith, or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments, undue prejudice to the opposing parties, or

futility of the amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15.  PCS's

cost recovery theory pursuant to § 107 is futile.  Section 107 provides that PRPs shall be liable

for "any other necessary costs of response incurred by any other persons consistent with the

national contingency plan."  §107(a)(4)(B).  Section 107(a) permits a private party to recover

cleanup costs without any establishment of liability to a third party.  United States v. Atlantic

Research Corp., 127 S.Ct. 2331, 2337-38 (2007).  Cleanup costs are those costs that the party has

incurred in cleaning up a site.  42 U.S.C. § 9607(a)(4)(B).  "When a party pays to satisfy a

judgment, it does not incur its own costs of response.  Rather, it reimburses other parties for

costs that those parties incurred.  United States v. Atlantic Research Corp., 127 S.Ct. 2331, 2338

(2007).  In this case, it is undisputed that PCS has not incurred any cleanup costs.  Therefore,

PCS's motion to amend its complaint to add a cost recovery claim is denied.

B.  Adding Third Parties

PCS wishes to add the following parties as third party defendants: Allwaste, Robin Hood, the City of Charleston, and shareholders of Ross.

### 1.  Allwaste, Robin Hood, and the City of Charleston

The EPA has issued an Enforcement Action Memorandum stating that the Site consists of 43 acres.  Only the westernmost 33.95 acres need to be remediated.  Of those 33.95 acres, Ashley II owns 27.68 acres; Allwaste owns 2.99 acres; Robin Hood owns 2 acres; and the City of Charleston owns 1.28 acres.  According to PCS, these three parties are directly liable because they own property that is a part of the Site which must be remediated.

Rule 19(a) of the Federal Rules of Civil Procedure provides for joinder of indispensable parties. It states:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

To determine whether parties should be joined under Rule 19, a court should determine whether the party is necessary.  *See* American Gen. Life and Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005).

Allwaste, Robin Hood, and the City of Charleston are necessary parties.  First, the Court will not lose subject matter jurisdiction if these parties are joined because the Court has federal

question jurisdiction over the case pursuant to 28 U.S.C. § 1331.  Second, complete relief cannot be accorded to the existing parties without the addition of these landowners.  "The complete relief standard of [Rule 19] is designed to insure that all persons who have an interest in the litigation are present so that any relief to be awarded will effectively and completely adjudicate the dispute."  Smith v. Mandel, 66 F.R.D. 405, 408 (D.S.C. 1975).  Ashley II seeks to recover its clean up costs from PCS; however, part of the Site is owned by Allwaste, Robin Hood, and the City of Charleston.  The Court does not see how it can ensure that PCS does not pay these persons' share of the clean up costs without joining them to this action.

In deciding whether parties should be joined to an action under Rule 19, a district court must consider the plaintiff's interest in choosing the parties to the action, the present defendant's interest, the interest of the potential but absent parties, and the public's interest in the complete, consistent, and efficient adjudication of disputes.  Provident Tradesmen's Bank & Trust Co. v. Patterson, 390 U.S. 102, 108-111 (1968).  Although Ashley II objects to the joinder of Allwaste, Robin Hood, and the City of Charleston, the remaining factors favor joining the potential parties. Adding these persons will ensure that PCS receives contribution from the landowners who appear to be PRPs.  In addition, Robin Hood, Allwaste, and the City of Charleston are unable to protect their interests in this litigation concerning the Site if they are not joined to the action. Finally, it would be most efficient to adjudicate liability related to the Site in this action rather than in a series of actions.

Because Allwaste, Robin Hood, and the City of Charleston are necessary parties and because their joinder will not destroy jurisdiction, the Court grants PCS's motion to add them to this action.

2. Ross's Shareholders

PCS claims that Ross was not properly dissolved and seeks to recover the dividends distributed to Ross's shareholders in 1997.   The court lacks jurisdiction over this claim.  District courts have supplemental jurisdiction over "claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  The dissolution of Ross lacks a common nucleus of operative fact with this CERCLA action.  *See* United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).

In addition, joinder of Ross' shareholders is improper.  Rule 14(a) of the Federal Rules of Civil Procedure authorizes a defendant to bring into a lawsuit any person "not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."  Adding a claim against a third-party defendant is proper only when the third party's liability is in some way dependent on the outcome of the main claim.  6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1446 (2d ed. 2007).  Whether Ross dissolved properly is independent from PCS's liability to Ashley II.  PCS's motion to add Ross's shareholders is denied.

C.  DSM's Direct Liability

PCS's proposed amended third party claim against DSM alleges that DSM is both directly and derivatively liable and that PCS is therefore entitled to contribution from DSM under § 113.  The facts that PCS alleges in support of its claim are as follows: Old CNC and DSM shared a legal services department.  DSM and old CNC made decisions concerning the release of hazardous substances during joint meetings with old CNC and DSM's executive committees.  Old CNC and DSM shared an environmental lab.  One maintenance engineering

consultant was responsible for maintaining equipment for both companies.

A CERCLA operator is one who manages, directs or conducts operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.  United States v. Bestfoods, 524 U.S. 51, 67-68 (1998).  In this case, PCS alleges that DSM made decisions concerning the pollution at the Site.  Therefore, it is plausible that DSM may be directly liable for the release of hazardous substances that occurred at the Site.  Accordingly, PCS may amend its claim against DSM to assert both direct and derivative liability.

Conclusion

DSM's motions to dismiss are denied.  DSM's motion to stay discovery pending disposal of its motions to dismiss is moot.  PCS has 15 days to file and serve its claims against Allwaste, Robin Hood, and the City of Charleston as well as its amended claims against DSM.  Allwaste, Robin Hood, and the City of Charleston are joined as plaintiffs to this action.  PCS's motion to join Ross's shareholders is denied.  PCS may amend its claims against DSM to include a claim for direct liability.

**AND IT IS SO ORDERED.**

_____
**C . WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

June 13, 2008
Charleston, South Carolina