IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Ashley II of Charleston, LLC, | ) | Civil Action No. 2:05-cv-2782-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| PCS Nitrogen, Inc., | ) | |
| | ) | |
| Defendant/Third- | ) | |
| Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ross Development Corporation; | ) | |
| J. Holcombe Enterprises, L.P.; James H. | ) | |
| Holcombe; J. Henry Fair, Jr.; Allwaste | ) | |
| Tank Cleaning, Inc. n/k/a PSC Container | ) | |
| Services, LLC; Robin Hood Container | ) | |
| Express, Inc.; City of Charleston, South | ) | |
| Carolina, | ) | |
| | ) | |
| Third-Party | ) | |
| Defendants. | ) | |

This was a cost-recovery action brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C. §§ 9601, et seq., to recover costs incurred to remediate 33.95 acres of a 43 acre parcel of land in Charleston, South Carolina ("the Site"). On September 26, 2005, this lawsuit was filed under CERCLA § 107 (42 U.S.C. § 9607) by one of the Site's current owners, Ashley II of Charleston, LLC ("Ashley"), against PCS Nitrogen, Inc. ("PCS"), seeking a declaratory judgment that PCS is jointly and severally liable for the cost of remediating the Site; and a money judgment in the amount of $194,232.94 to reimburse Ashley for costs of remediation that it had already incurred. [Entry 1 at ¶¶ 28-36; Entry

209 at ¶¶ 31-37].

PCS filed contribution claims pursuant to CERCLA § 113(f)(1) against Ashley, Ross Development Corporation ("Ross"); Koninklijke DSM N.V., and DSM Chemicals of North America, Inc. (collectively "the DSM Parties"); James H. Holcombe ("Holcombe"), J. Holcombe Enterprises, L.P. ("Holcombe Enterprises"), and J. Henry Fair, Jr. ("Fair") (collectively "The Holcombe and Fair Parties"); Allwaste Tank Cleaning (n/k/a QualaServices, LLC) ("Allwaste"); Robin Hood Container Express, Inc. ("RHCE"); and the City of Charleston, South Carolina ("the City"), alleging that each third party was a potentially responsible party ("PRP"). [Entry 226]. Several of the third-parties also filed claims.

The case was bifurcated into liability and allocation phases by order of The Honorable C. Weston Houck on July 25, 2006. [Entry 56]. On September 28, 2007, pursuant to Federal Rule of Civil Procedure 52, Judge Houck entered Findings of Fact and Conclusions of Law determining PCS to be the successor-in-interest to former Site owner, Columbia Nitrogen Corporation ("CNC"). [Entry 118]. The case was reassigned to the undersigned on January 6, 2009. [Entries 307 and 308]. On August 13, 2009, the court granted summary judgment to the DSM Parties. [Entry 409]. On September 30, 2010, the court issued an order and opinion containing its findings of fact and conclusions of law. [Entry 561]. On October 13, 2010, the court issued an amended order and opinion. [Entry 563]. On May 27, 2011, the court issued a second amended order and opinion, after addressing several motions to amend or correct the judgment, and for reconsideration. [Entry 27, 2011].

This case is currently before the court on Ross's Motion to Amend of Modify the court's second amended order and opinion, as well as PCS's motion to modify the judgment entered against

2

Ashley.

## DISCUSSION

I. **Standards**

    A.    Rule 52(b)

Federal Rule of Civil Procedure 52(b) provides, in pertinent part, as follows: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." *Id.*

    B.    Rule 59(e)

Although Rule 59 addresses grounds for new trials, some courts have reasoned that the concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury. 11 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2804. The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e): 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available earlier; or 3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The Fourth Circuit has emphasized that mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. *Id.* (citing *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)). Moreover, "Rule 59(e) motions may not be used to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *In re: Reese*, 91 F.3d 37, 39 (7th Cir.1996) ("A motion under Rule 59(e) is not authorized 'to enable a party to complete presenting his case after the court has ruled against

him.'"). "In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations omitted).

    C.    Rule 60(b)(6)

Rule 60(b)(6) provides that the court may relieve a party from a final judgment, order, or proceeding for any reason that justifies relief. *Id.*

**II.**    **Ross's Motion to Amend or Modify**

    A.    Money Judgment

Ross requests that the court modify its second amended order and opinion to find that PCS may not obtain a monetary judgment on its contribution claim against Ross until it has proven that PCS has paid Ashley II more than its pro rata share of the monetary judgment against it. [Entry 634 at 1]. In *United States v. Atl. Research Corp.*, 551 U.S. 128, 138-39 (2007), the Supreme Court found that the meaning of the term "contribution" in CERCLA is the same as in the traditional sense and is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *Id.* at 138 (citing Black's Law Dictionary 353 (8th ed. 2004)). Ross's assertion is a correct interpretation of the law to the extent that PCS cannot collect upon its judgements against contributing tortfeasors until it has paid more than its share of the judgment entered in favor of Ashley in this case. However, the court finds that it is not necessary to amend or modify its previous order as the entry of judgment against Ross in favor of PCS was proper pursuant to CERCLA §§ 113(f) and (g)(2)(B).

    B.    Indemnification Agreement

Ross requests that the court modify its ruling that Ross is liable to PCS under an indemnity

provision arguing that: 1) PCS did not show by clear and convincing evidence that any exception to the doctrine of merger by deed applies; 2) PCS failed to provide "prompt notice in writing" of a claim involving the Site as required by the indemnity provision; and 3) that PCS's indemnification claim is precluded by South Carolina's statute of repose and statute of limitations. Entry 634 at 2.

        1.     *Doctrine of Merger by Deed*

Ross contends that the court "committed legal error" in holding Ross liable to PCS under the indemnification provision in the January 1966 Letter of Agreement. [Entry 634 at 4]. Ross contends PCS did not show by clear and convincing evidence that any exception to the doctrine of merger by deed applies. [Entry 634 at 2]. The court considered the parties' arguments with regard to the survival of the indemnification agreement in its order on several motions for reconsideration filed by the parties. *See* Entry 626. Ross's disagreement with the court's decision does not warrant reconsideration. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (citing *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)).

        2.     *Notice, Statute of Limitations and Statute of Repose Arguments*

Ross contends that the indemnification agreement should not be enforced against it because: 1) PCS failed to comply with its terms to provide "prompt notice in writing" of a claim involving the Site; and 2) PCS's indemnification claim is precluded by South Carolina's statute of repose and statute of limitations.

Ross never argued or explained these defenses prior to judgment, and only cursorily raised these defenses in their answer in a list of thirty-two other possible defenses to PCS's claims. [*See* Entry 239 at 6, 7]. Ross had ample opportunity to properly assert these defenses before this time. To permit Ross to argue these defenses at this late stage would be to permit the waste of judicial

resources after Ross made a strategic decision not to argue these points during the various stages of this litigation. *See Sales v. Grant*, 224 F.3d 293 (4th Cir. 2000) (finding that although two defendants had "technically pled" a qualified immunity defense in their answers to the initial complaint they could not raise this issue before the district court on remand because: 1) they never explained the legal or factual basis for their claim of qualified immunity prior to remand; 2) their mention of qualified immunity in their answers consisted of only a single, cursory sentence on the matter, contained in a listing of several affirmative defenses; and 3) the defendants had numerous other opportunities to assert their claim of qualified immunity); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999)("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised."); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914 (7th Cir. 1994) (although raised in initial pleading, defense of lack of personal jurisdiction waived when not advanced again until appeal); *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (although raised in initial pleading, defense of lack of personal jurisdiction waived when not advanced again until appeal). The court declines to consider these arguments, finding that they have been waived.

### III.     PCS's Motion to Modify the Judgment Entered Against Ashley

PCS requests that the court "eliminate from its judgment any ambiguity as to the financial responsibility for future response costs of [Allwaste] and [the Holcombe and Fair Parties] to [PCS] or any other entity that remediates the [Site]." Entry 637 at 2. PCS requests that the Court make three changes to its second amended judgment: 1) include in the judgment the court's conclusions that Ashley, Allwaste and the Holcombe and Fair Parties are liable to PCS for five percent, three

percent, and sixteen percent respectively of past and future response costs at the Site;[1] 2) vacate the portion of the judgment that shifts financial responsibility for response costs from Allwaste and the Holcombe and Fair Parties to Ashley; and 3) reverse its dismissal of PCS's contribution claims against Allwaste and the Holcombe and Fair Parties, and enter judgment in favor of PCS and against Allwaste and the Holcombe and Fair Parties in the amount of three percent and sixteen percent respectively. Entry 637 at 11-12.

PCS contends that the following changed circumstances warrant the requested amendments: 1) Ashley has declared that it is unable to remediate the Site; 2) the court clarified that the agreement between the Holcombe and Fair Parties and Ashley was a "release" rather than an "indemnification" provision in its second amended order and opinion; and 3) Fair and Ashley are now engaged in new litigation over the impact of Ashley's inability to remediate the Site. Entry 637 at 2, 5, 6. The court declines to amend the judgment as requested by PCS.

PCS essentially seeks amendment to the judgment to address what would happen if another entity remediates the Site instead of Ashley. *See* Entry 637 at 5-6, 8-9, 11. However, the fact that Ashley is purportedly unable to remediate the Site at this time does not permit the court to adjudicate claims that are not before it. In the case before the court, Ashley sought to recover past and future response costs to remediate the Site from PCS. PCS then brought contribution claims against Allwaste, the Holcombe and Fair Parties, and others. Because Ashley, the plaintiff in this case, released Allwaste and the Holcombe and Fair Parties from liability related to these claims, the court

---

[1] The court notes that it did not conclude that Allwaste and the Holcombe and Fair Parties were liable to PCS. In fact, the court dismissed PCS's contribution claims against Allwaste and the Holcombe and Fair Parties because these parties had obtained releases from Ashley, the plaintiff in this case. *See* Entry 627 at 61 and 64.

7

properly determined that Allwaste and the Holcombe and Fair Parties could not be held liable in contribution to any other party for Ashley's past and future response costs, and dismissed these claims. *See* Restatement (Third) of Torts § 23(a). Whether or not Allwaste and the Holcombe and Fair Parties will be required to pay remediation costs should an entity other than Ashley seek to remediate the Site is not before this court. The court notes, however, that it equitably allocated the remediation costs among the parties pursuant to CERCLA § 113(g)(2)(B) and that this equitable allocation is binding in future actions. Thus, to the extent that the Site is remediated by another entity, the affect of the release and indemnification agreements between Ashley and Allwaste, and Ashley and the Holcombe and Fair Parties respectively will need to be addressed in a separate action brought by that entity seeking response costs pursuant to the court's equitable allocation.

## CONCLUSION

Ross's Motion to Amend or Modify the court's second amended order and opinion (Entry 634), is **denied.** PCS's motion to modify the judgment entered against Ashley II of Charleston, L.L.C. (Entry 637) is **denied**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

August 19, 2011
Columbia, South Carolina