**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Ashley II of Charleston, L.L.C., ) | |
| ) | Civil Action No. 2:05-2782-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| PCS Nitrogen, Inc., ) | |
| ) | |
| Defendant/Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Ross Development Corporation; ) | |
| Koninklijke DSM N.V.; DSM Chemicals ) | |
| of North America, Inc.; James H. ) | |
| Holcombe; J. Holcombe Enterprises, L.P.; ) | |
| J. Henry Fair, Jr.; Allwaste Tank Cleaning, ) | |
| Inc.; Robin Hood Container Express; and ) | |
| the City of Charleston, ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____) | |

On June 14, 2011, PCS Nitrogen, Inc. ("PCS") filed a motion for a determination of damages, requesting that the court establish a procedure to determine the amount owed by Ross Development Corporation ("Ross") to PCS under the terms of an indemnity contract. ECF No. 631. On February 24, 2012, the court issued an order (the "February 2012 order") holding that PCS is entitled to recover from Ross 45 percent of the attorney's fees, costs, and expenses that PCS spent litigating this case. ECF No. 692. On January 15, 2013, the court issued an order vacating in part the February 2012 order. ECF No. 705. The court held a status conference on February 4, 2013, at which the parties agreed to submit supplemental briefing to assist the court in delineating which of PCS's litigation costs and expenses are covered under the terms of the indemnity contract. *See* ECF Nos. 710, 715 & 722.

Upon review, it appeared to the court that a potentially novel question of state law could be dispositive of the issues remaining in this case. Pursuant to South Carolina Rule of Appellate Procedure 244, this court certified a question to the South Carolina Supreme Court on August 19, 2013. ECF No. 749. The certified question was:

> Does the rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts, unless such intention is expressed in clear and unequivocal terms, apply when the indemnitee seeks contractual indemnification for costs and expenses resulting in part from its own strict liability acts?

The South Carolina Supreme Court accepted the certified question and heard arguments on March 4, 2013.

The South Carolina Supreme Court issued its opinion on July 23, 2014. ECF No. 770. The South Carolina Supreme Court answered the certified question "no," thereby permitting PCS's indemnification claim against Ross. *Id.* at 1. The South Carolina Supreme Court went on to state that "the indemnification agreement was limited to any liability attributable to Ross up to the date of the 1966 closing . . . . The agreement did not permit indemnification from Ross for any liability (by way of negligence, strict liability or otherwise) after the 1966 closing." *Id.* at 5. The South Carolina Supreme Court denied a petition for rehearing on September 25, 2014.

Via text order entered on September 30, 2014, the parties were directed to submit short briefs on the effect of the decision of the South Carolina Supreme Court on the indemnification question pending before this court. ECF No. 789. The parties submitted briefs as directed on October 10, 2014. *See* ECF Nos. 793 & 794.

The legal conclusions stated herein below will control the calculation of damages under the contract.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2008, Ashley II of Charleston, L.L.C. ("Ashley") filed an amended complaint against PCS seeking a declaration of joint and several liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107 for environmental response costs at the Columbia Nitrogen Site in Charleston, South Carolina (the "Site"). ECF No. 209. Ashley also sought damages based on past response costs. *Id.* On August 4, 2008, PCS filed an amended answer and counterclaim. ECF No. 226. PCS asserted contribution claims under CERCLA § 113(f) against Ashley; Ross; Koninklijke DSM N.V. and DSM Chemicals of North America, Inc.; James H. Holcombe; J. Holcombe Enterprises, L.P.; J. Henry Fair, Jr.; Allwaste Tank Cleaning; Robin Hood Container Express, Inc. ("RHCE"); and the City of Charleston, South Carolina, alleging that they are potentially responsible parties. *Id.* PCS also asserted a claim against Ross for indemnification based on contract. *Id.*

On May 27, 2011, after a bench trial, the court issued a Second Amended Order in which a detailed recitation of the facts of this case can be found. ECF No. 627. The following findings of fact are pertinent here. Ross was formerly known as Planters Fertilizer & Phosphate Company ("Planters") and PCS is the successor-in-interest to Columbia Nitrogen Corporation ("CNC").[1] *Id.* at 3 & 9. Ross owned the Site from 1906 to 1966 and operated a phosphate fertilizer manufacturing facility on the Site during this time. *Id.* at 9. Ross's activities generated pyrite slag as a waste product, which is the source of a vast majority of the arsenic and much of the lead contamination at the site, as well as the high acidity. *Id.* at 12.

---

[1] Ross and Planters are collectively referred to as "Ross," and PCS and CNC are collectively referred to as "PCS."

3

In 1966, Ross sold the Site to PCS. *Id.* at 14-15. The agreement to sell the Site included an indemnification provision stating:

> [Ross] agrees to indemnify and hold harmless [PCS] in respect to all acts, suits, demands, assessments, pr[o]ce[e]dings and cost and expenses resulting from any acts or omission[s] of [Ross] occurring prior to the closing date and pertaining herein, provided [Ross] receives prompt notice in writing of such claims or demand and [Ross] shall have the right to litigate or contest such claim.

*Id.* at 14. PCS owned the Site from 1966 to 1985 and operated a fertilizer granulation plant on the Site between 1966 and 1972, as well as an acid plant between 1966 and 1970. *Id.* at 9 & 17. PCS's activities caused arsenic, lead, and acid contamination at the Site. *Id.* at 17-19. Also, between 1971 and 1981, PCS performed various demolition activities on the Site that significantly disturbed the contaminated soils. *Id.* at 21-23.

In the Second Amended Order, the court held that PCS is jointly and severally liable for the harm, and that PCS is liable to Ashley for response costs pursuant to CERCLA § 107(a)(2). *Id.* at 121. The court directed entry of judgment for Ashley in the amount of $147,617.02 plus interest against PCS and declared that PCS would be liable to Ashley for 76 percent of future response costs. *Id.* The court also directed entry of judgment for PCS in the amount of $87,404.82 plus interest against Ross and in the amount of $1,942.32 plus interest against RHCE. *Id.* The court declared that Ross would be liable to PCS for 45 percent of future response costs, and that RHCE would be liable to PCS for 1 percent of future response costs. *Id.* Finally, the court declared that PCS is entitled to reimbursement from Ross pursuant to the indemnification contract. *Id.* A Second Amended Judgment was entered on May 31, 2011. ECF No. 628.

## II. DISCUSSION

Before the court can receive evidence of PCS's litigation costs and expenses and engage in a calculation of damages, it must interpret the language in the 1966 indemnification agreement, which provides that Ross must indemnify PCS for costs that "result[] from" Ross's pre-1966 conduct.

Ross argues that the indemnity contract may not be construed to cover the litigation costs and expenses PCS incurred because those costs and expenses did not result solely from the acts or omissions of Ross but rather resulted from the acts or omissions of both PCS and Ross. ECF No. 793 at 4. The court disagrees. The language in the indemnity contract is broad and refers to "all . . . costs and expenses resulting from any acts or omission[s] of [Ross] occurring prior to the closing date," and notably does not require that such costs and expenses result solely from Ross's acts or omissions. The South Carolina Supreme Court confirmed this reading of the contract, stating that PCS may recover "fees and costs associated with Ross's CERCLA liability incurred because of its ownership and operation of the Site prior to the 1966 closing." ECF No. 770 at 5. PCS may be indemnified for "any liability attributable to Ross up to the date of the 1966 closing." *Id*. PCS may not, however, be indemnified by Ross "for any acts or omissions by Ross occurring after the 1966 closing date." *Id*. at 5, n.4. Furthermore, "PCS is not entitled to indemnification from Ross for any liability associated with contamination [occurring] after the 1966 closing." ECF 792-1. Therefore, PCS may recover from Ross any of its litigation expenses defending the claims brought against it by Ashley which PCS can prove are associated with liability incurred because of Ross's pre-1966 conduct. *See also* ECF No. 705 at 12.

The court finds that the costs and expenses PCS incurred litigating its claims against Ross are unrecoverable.[2]  Although Ross has conceded that those costs do result from its pre-1966 conduct, Ross contends that the indemnification contract does not contemplate recovery of costs associated with claims between the contracting parties themselves.  *See, e.g.*, ECF No. 793 at 5.  The court agrees with that interpretation.  Generally speaking, the default rule of interpretation is that indemnity contracts cover costs associated with claims brought by third-parties, rather than by the indemnitee.  *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers*, 584 S.E.2d 375, 378-79 (S.C. 2003) (citing *Smoak v. Carpenter Enter., Inc.*, 460 S.E.2d 381, 383 (1995)). Here, nothing in the contract indicates otherwise.  Instead, the inclusion of the clause requiring that PCS provide "prompt notice" of any acts, suits, or demands in order that Ross may contest them would be nonsensical to apply in an instance where PCS seeks to enforce a right against Ross.  To avoid such a result, the court construes the contract so as not to cover costs associated with actions between Ross and PCS, but only costs associated with PCS's defense of claims brought by Ashley.

Having determined that PCS may only recover costs and expenses incurred litigating its defense against Ashley which are the result of Ross's pre-1966 conduct, the court must consider how to apportion "intertwined" costs; that is, those costs PCS incurred in furtherance of both its defense and its claims against the third-party defendants.  PCS puts forth two approaches: either award PCS "intertwined fees in proportion to CERLCA liability," or award PCS "all intertwined fees."  ECF No. 710 at 11-12.  Under the former approach, as PCS puts it, "the [c]ourt would be resurrecting the approach to allocating attorney's fees set forth in its February 24, 2012 order."  *Id.* at 11.  The

---

[2] PCS indicated to the court that, with the exception of its claim again Ross, it does not seek to recover the costs and expenses it incurred litigating its claims against the third-party defendants. ECF No. 710 at 11.

former approach appeals as a compromise, but, as a matter of logic, it does not follow from the court's discussion above. If PCS incurred a reasonable litigation cost as a result of Ross' pre-1966 conduct in furtherance of its defense against Ashley's claim—i.e., a cost covered by the indemnification contract—the fact that the cost incurred incidentally advanced one of the claims not held to be within the scope of the indemnification contract does not render the cost only partially recoverable. Although the parties may dispute whether certain costs are truly intertwined, if the court finds that a cost was reasonably incurred in furtherance of both indemnified and non-indemnified claims, PCS may recover the cost from Ross.

### III. CONCLUSION

In summary, the court holds that PCS is entitled to recover from Ross the litigation costs and expenses it incurred in defense of Ashley's CERCLA claim which are the result of Ross's pre-1966 conduct. PCS may not recover the costs and expenses it incurred in bringing claims against Ross and other third-party defendants. To the extent PCS incurred a cost related both to the litigation of its defense against Ashley and one of its third-party claims, PCS may recover the cost. The parties are ordered to consult and consent on how to proceed with the calculation of damages in light of this ruling and submit a status report no later than December 8, 2014.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour<br>
Margaret B. Seymour<br>
Senior United States District Judge

Columbia, South Carolina
November 18, 2014